JS-6  O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CALIFORNIA IRONWORKERS FIELD PENSION TRUST, <br><br> Plaintiff, <br><br> v. <br><br> M.M. STEVENS, LLC, ET AL., <br><br> Defendants. | Case No. CV 16-07791 DDP (AJWx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> [Dkt. 45] |

Presently before the court is Plaintiffs' Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

Between June 1999 and July 2013, S Diamond Steel, Inc. ("S Diamond") made contributions, pursuant to a collective bargaining agreement, to the California Ironworkers Field Pension Trust ("the Plan"), a multiemployer employee benefits plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37)(A). S Diamond ceased making contributions to the Plan,

and Plaintiff Board of Trustees of the California Ironworkers Field Pension Trust determined that S Diamond withdrew from the Plan as of July 31, 2013.[1]  Under authority granted to the Plan by the Multiemployer Pension Plan Amendments Act ("MPPAA"), Plaintiffs assessed withdrawal liability of $1,310,439.50 against S Diamond and notified S Diamond of the same.  See Carpenters Pension Trust Fund for N.California v. Underground Const. Co., 31 F.3d 776, 778 (9th Cir. 1994); 29 U.S.C. § 1381 et seq.  S Diamond did not dispute the imposition of withdrawal liability by invoking the MPAA's exclusive arbitration provision.  See, e.g. Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach., 688 F. Supp. 2d 902, 907 (N.D. Cal. 2010).

    At no time has S Diamond made any withdrawal liability payments.  S Diamond filed for Chapter 11 bankruptcy in the District of Arizona on July 11, 2016.  D. Ariz. Case No. 2:16-bk-07846.  That court, overruling S Diamond's objection to Plaintiffs' proof of claim, has found S Diamond liable for withdrawal liability, liquidated damages, and attorneys fees in amounts to be determined at a later date.

    In the instant suit, Plaintiffs allege that Defendants are jointly and severally liable for S Diamond's liabilities because

---

[1] Defendants maintain that S Diamond sent notice of its intent to withdraw, but did not actually withdraw.  As discussed further herein and explained in this Court's prior Order, however, S Diamond never initiated arbitration or otherwise challenged Plaintiff's determination that S Diamond withdrew from participation in the Plan.  See Dkt. 37 at 4-5.

2

all three entities are members of the same controlled group.[2] At the time S Diamond withdrew from the Plan, Matthew Stevens owned 100% of S Diamond's shares. Matthew Stevens' wife, Dana, owned over ninety percent of Defendant Milco Solutions, Inc. ("Milco"). Matthew and Dana Stevens collectively owned 100% of Defendant M.M. Stevens, LLC ("M.M. Stevens.")

Plaintiffs now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

---

[2]

3

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

The central issue in this case is whether S Diamond, M.M. Stevens, and Milco are "controlled group members." Under the

4

MPPAA, pension plans can impose withdrawal liability on employers that withdraw from a pension plan. <u>Carpenters Pension Trust Fund for N. California v. Underground Const. Co.</u>, 31 F.3d 776, 778 (9th Cir. 1994); 29 U.S.C. § 1381 et seq. Trades and businesses "under common control" are treated as a single employer and are jointly and severally liable for one another's withdrawal liability. <u>Bd. of Trustees of Western Conference of Teamsters Pension Trust Fund v. Lafrenz</u>, 837 F.2d 892, 893 (9th Cir. 1988); 29 U.S.C. § 1301(b)(1).

A group of trades or businesses constituting a "brother-sister group" is considered to be under "common control." 26 C.F.R. §1.1414(c)-2(a). "The term 'brother-sister group . . .' means two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of § 1.414(c)–4) a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization. . . ." 26 C.F.R. § 1.414(c)-2(c); <u>see</u> <u>also</u> <u>CMSH Co. v. Carpenters Tr. Fund for N. California,</u> 963 F.2d 238, 240 (9th Cir. 1992). Plaintiffs assert that S Diamond, M.M. Stevens, and Milco comprise a brother-sister group, and therefore constitute a single employer under the MPPAA. Thus, Plaintiffs contend, M.M. Stevens and Milco are jointly and severally liable for S Diamond's withdrawal liability.[3]

---

[3] There is no dispute that each of the entities conducts a trade or business.

5

There appears to be no dispute as to who possessed what ownership interest in each of the entities. Matthew Stevens owned 100% of S Diamond. (Bedolla Decl., Ex B at 41:7-9.) His spouse, Dana Stevens, owned over 90% of Milco. (Bedolla Decl., Ex. A at 9-12, 36:24-25. Michael and Dana Stevens collectively owned 100% of M.M. Stevens.[4] (Bedolla Decl., Ex. B at 15:12-22.)

Defendants argue that Milco is not part of a brother-sister group with S Diamond because (1) the same persons did not own a "controlling interest" in each alleged component organization and, (2) considering ownership of each corporation only to the extent such ownership was identical with respect to each organization, neither Matthew nor Dana Stevens was in "effective control" of each entity.[5] In other words, Defendants argue that because Matthew Stevens owned all of S Diamond and his wife, Dana, owned 90% of Milco, neither of them had a controlling interest or effective control of both entities, and therefore the two entities are not members of a single brother-sister group. (Opposition at 14.)

"Ownership" under the relevant regulation includes both direct ownership and ownership under 26 C.F.R. §1.1414(c)-4. 26 C.F.R. § 1.414(c)-2(c). Section 1.414(c)-4(b)(5)(ii) provides that "an individual shall be considered to own an interest owned . . . by or

---

[4] Defendants do not dispute that M.M. Stevens was part of a controlled group with S Diamond or that, at the time of S Diamond's withdrawal, Michael and Dana Stevens "collectively held a 100% ownership interest as the only members of Defendant M.M. Stevens, L.L.C." (Defendants' Statement of Genuine Disputes ¶ 8.)

[5] The regulations define "controlling interest" as ownership of at least 80% of a corporation's stock and "effective control" as over 50% of voting power. 26 C.F.R. § 1.414(c)-2(b)(2)(i)(A), (c)(2)(I).

6

for his or her spouse." 26 C.F.R. § 1.414(c)-4(b)(5)(ii). Thus, Plaintiffs argue, Michael Stevens' 100% interest in S Diamond is attributable to his wife, Dana Stevens, who therefore owns controlling interests in all three entities.[6]

Defendants argue, however that an exception to the spousal attribution rule applies. That exception applies if four conditions are met: (1) the non-owning spouse does not own any interest in an organization; (2) the non-owning spouse "is not a member of the board of directors, a fiduciary, or an employee of such organization and does not participate in the management of such organization . . .;" (3) not more than half of the organization's income is derived from royalties, rents, dividends, interest, and annuities; and (4) the organization is not subject to conditions which limit the owning spouse's right to dispose of his or her interest which run in favor of the non-owning spouse or the non-owning spouse's children. 1.414(c)-4(b)(5)(ii). Of these four conditions, only the second appears to be at issue. Defendants assert, albeit without citation to the record, that "Dana was not a member of S Diamonds' (sic) board of directors, was not a fiduciary of S Diamond and did not participate in the management of S Diamond." (Opposition at 18:16-19.)

As an initial matter, Defendants' argument appears to be inconsistent with Dana Stevens' deposition testimony, in which she stated that her responsibilities at S Diamond included overseeing "payroll, insurance, accounts payable, [and] accounts receivable .

---

[6] See note 4, supra.

7

. . ." (Bedolla Decl., Ex. A at 32:4-5.) Even assuming, however, that such responsibilities do not constitute "participation in the management" of S Diamond for purposes of the spousal attribution exception, there appears to be no dispute that Dana Stevens was an employee of S Diamond. Indeed, she testified that she was "continuously employed by S. Diamond Steel, Inc. from 2000." (Id. at 31:19-20.) The spousal attribution exception only applies if, among the other factors, the non-owning spouse is "not a member of the board of directors, a fiduciary, or an <u>employee</u> of such organization." 1.414(c)-4(b)(5)(ii)(B) (emphasis added). In light of the undisputed evidence that, in Dana Stevens' own words, she was an S Diamond employee, the spousal attribution exception does not apply. Accordingly, Michael Stevens' 100% ownership interest in S Diamond is attributable to Dana Stevens. Because Dana Stevens owned a controlling interest in Milco, M.M. Stevens, and S Diamond, no reasonable trier of fact could dispute that those entities were members of a single brother-sister group. As such, Defendants are jointly and severally liable for S Diamond's withdrawal liability.

B.   Effect of S Diamond Bankruptcy Proceedings

S Diamond has filed for Chapter 11 bankruptcy in the District of Arizona. D. Ariz. Case No. 2:16-bk-07846. The bankruptcy court determined that S Diamond is liable for withdrawal liability, interest, liquidated damages, and attorneys' fees, in an amount to be determined at a later date.[7] (Declaration of Guy Bluff ¶ 13.)

---

[7] The bankruptcy court made this determination in the context
(continued...)

Defendants argue that, in light of the procedural posture of the S Diamond bankruptcy proceeding, this court should not rule on Plaintiffs' Motion for Summary Judgment because the amount of withdrawal liability will be determined in bankruptcy court.

Defendants' argument is not persuasive. As an initial matter, there has been no final disposition in bankruptcy court, and the suggestion that the bankruptcy court's determination regarding the amount of S Diamond's liability may differ from the amount sought here is speculative at best.[8] Furthermore, courts have rejected similar arguments. As one court explained, bankruptcy proceedings "simply cannot affect the derivative legal liability of a nonbankrupt affiliate, any more than one joint tortfeasor would be protected because another is in bankruptcy proceedings. <u>I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Slyman Indus., Inc.</u>, 901 F.2d 127, 129 (D.C. Cir. 1990); <u>see also</u> 11 U.S.C. §524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on . . . such debt.") Indeed, a controlled group constituting a single employer for MPPAA purposes "is a defendant with many pockets. Were all members of the group discharged [in bankruptcy] . . . would [be to] allow the defendant to mark its front pockets bankrupt, while removing assets to its

---

[7](...continued)
of a summary judgment motion brought by the Trustee claimant regarding S Diamond's objection to the Trustee's proof of claim.

[8] Defendants' citation to <u>Board of Trustee of Trucking Employees of North Jersey Welfare Fund, Inc.- Pension Fund v. Able Truck Rental</u>, 822 F.Supp. 1091 (D. New Jersey) is, therefore, inapposite. There, the court held only that a plaintiff could not pursue a separate judgment against one controlled group member when a final judgment had already been entered against another controlled group member. <u>Able Truck Rental</u>, 822 F.Supp. at 1095.

9

back pockets." McDonald v. Centra, Inc., 946 F.2d 1059, 1065 (4th Cir. 1991). Such an approach would frustrate the purposes of both the MPPAA and ERISA. See Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc., 801 F.3d 1079, 1094 (9th Cir. 2015) ("A primary purpose of ERISA is to ensure that employees and their beneficiaries [a]re not ... deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans. The MPPAA's purpose is better to effectuate ERISA's purposes.") (internal quotation marks and citation omitted).

Accordingly, the pendency of bankruptcy proceedings regarding S Diamond is no bar to Plaintiff's case against Defendants.

**IV. Conclusion**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is GRANTED.


IT IS SO ORDERED.


Dated: October 4, 2017

DEAN D. PREGERSON

United States District Judge